MARKMAN, J.
(concurring). I fully support the majority opinion and write separately only to elaborate upon its assertion that the dissent raises, but fails to answer, “many practical questions.” Ante at 564. The rule proposed by the dissent, and the unanswered questions arising from that rule, would create confusion and uncertainty among employers throughout this state and, as such decisions inevitably do, require employers to devote more time to consulting with lawyers and fending off and negotiating lawsuits, and less time to managing their businesses.
The dissent would produce this result by making employers increasingly liable for the workplace crimes *567 of their employees. Under what circumstances would this liability arise? Well, we really do not know, except that the dissent would leave it to jtíries to decide whether employers possessed sufficient information concerning an employee’s “habits, temperament, or nature” to justify holding them responsible for the crimes of that employee. Post at 570-571. In either hiring or failing to fire an employee who later committed a crime, “ [i]t is for the jury to determine whether [an employer] decided correctly.” Post at 572 n 1. In the instant case, the dissent opines, crude statements uttered by an employee are sufficient to require a jury trial for an employer that failed to recognize that such statements might be a prelude to a violent rape.[1]
Scope of the Assessment — The dissent asserts that “[t]he obligation to assess its employee’s fitness for a job falls on the employer, not on the victims of that employee’s actions.” Post at 572 n 1. What exactly does this mean in the real world of employers and employees? What is an employer’s obligation of “assessment” such that it might avoid a lawsuit? What policies must be adopted by an employer to stave off a potentially destructive lawsuit when one of its employees commits a crime? Is it enough that an employer ascertains whether an employee or a job applicant has a criminal record? Is it enough that an employer also ascertains whether an employee or a job applicant has an arrest record? Apparently none of this is enough because the perpetrator here had no criminal record. What additional kind of “assessment” would the dissent require? Would a psychiatric examination be required? Would *568 continuing psychological testing be necessary? Must an employee’s personal lifestyle be evaluated? To what extent must an employee’s interpersonal relationships at work be scrutinized? In short, what type of “assessment” is required to ensure that an employee is a person of the requisite “habits, temperament, or nature” such that an employer will not be held accountable for future criminal misconduct by that employee?
Interpreting the Assessment — What meaning must an employer ascribe to the results of the “assessment” it must undertake? That is, what is an employer looking for in its “assessment”? Would an unorthodox personal lifestyle apprise an employer that an employee is not a person of requisite “habits, temperament, or nature”? What about unusual avocations, interests, politics, or reading and viewing preferences? What about off-color jokes, crude rhetoric, extreme opinions, odd insights, idiosyncratic body language, strange demeanor, or politically incorrect views reflected in the workplace? How extensively would an employee have to be questioned about such matters and with what specific purpose in mind? What if an employer’s “assessment” merely concluded that an employee’s crude statements were simply crude? What if the “assessment” merely concluded that an employee did not really intend to rape the person to whom such crude statements had been directed? What conceivably might be discovered by an “assessment” of an employee making crude statements that would lead the dissent to exonerate an employer from liability for a subsequent crime by that employee? What kind of information from the “assessment” would place an obligation upon an employer to undertake further inquiry and what kind of information would not, to avoid the risk of a lawsuit? In short, what is a prudent and responsible employer required to do with the information generated from the “assessment”?
*569 Consequences of the Assessment — Finally, what actions must be undertaken by an employer that has performed the required assessment? Is it enough that an employer instruct an employee to cease certain conduct or behavior? If an employee or an applicant does have a criminal or arrest record, or if he or she has engaged in speech or conduct that might later be viewed by some as a prelude to a crime, is it obligatory that such person either not be hired or be fired? What type of criminal or arrest record would impose this obligation? Would a previous misdemeanor conviction, for example, of making a lewd comment or cursing in public sufficiently apprise an employer that a person is likely to commit a violent rape? What behaviors in the workplace and what personal “habits, temperament, or nature” will sufficiently apprise an employer that a person “ ‘may eventually,’ ” post at 578 n 9 (emphasis and citation omitted), commit a violent criminal offense? If professionally trained psychologists and psychiatrists are unable to predict criminal behavior, is it reasonable to obligate an employer producing machine tools or automotive products to engage in this kind of speculation at the risk of a lawsuit? Is it ever relevant, as in this case, that the victim herself, working in close proximity with the criminal perpetrator, failed to recognize that he posed a threat to violently rape her? Why under these circumstances would a rational employer not simply fire any person whose “habits, temperament, or nature,” when viewed in retrospect, might someday constitute the basis for a lawsuit? Why would any rational employer expose itself to the vagaries of litigation-by-hindsight (“the employer should have recognized,” “the employer should have been aware,” “the employer should have connected the dots,” “the employer should have seen things as clearly as we do now”) where it fails to predict unpredictable behavior if this *570 could all be avoided by simply firing every odd or rude or quirky employee?
If employers are required to play by the dissent’s rules, then the dissent owes them the courtesy of apprising them how they might comply. The dissent asserts that not “ ‘every inappropriate workplace comment’ . . . [or] ‘inappropriate workplace speech... is sufficient to create a jury-submissible question,’ ” post at 575 n 5, but never endeavors to explain why this is so or where the line would be drawn between comments and conduct that place an employer in the courtroom and those that do not. That is, the dissent never endeavors to explain what an employer can do to avoid tomorrow’s crippling lawsuit when one of its employees acts in pursuit of his or her own personal demons and commits a crime.[2]

 The question here is not whether an employee’s statements evidenced sexual harassment or whether they constituted reprehensible or sanctionable behavior, but only whether the employer should be held accountable here for an employee’s criminal behavior.

 The dissent’s response to this concurring opinion is telling. I raise questions concerning the workability of its approach to the law and the dissent counts up these questions and calls them “histrionic.” Post at 577 n 8. The dissent then eschews that it “fosters a general rule” and asserts that it is only issuing a decision applicable “in these particular circumstances ----” Id. But, of course, this is not the way the law operates. When we issue a decision, we set forth the law, not only for the instant case, but for all future cases as well. Our decisions establish precedent, and they instruct citizens who are not among the parties how they might conform to the law in order to avoid becoming a party in tomorrow’s lawsuit. The dissent proclaims that it is simply “applying law to facts,” id., begging the question of what exactly that “law” is and what are the dispositive “facts,” and what “facts” must be demonstrated by an employer in order not to breach that “law.” These are several more questions that the dissent can add to its calculations and, doubtless, several more questions that it can choose not to answer.